***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Harris. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Harris with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties hereto are subject to and bound by the North Carolina Workers' Compensation Act.
2. There existed an employee/employer relationship between the parties. *Page 2 
3. The employer is a duly qualified self-insured, administered by Gallagher Bassett Services, Inc. at the time of filing and now administered by Gates McDonald.
4. Plaintiff's average weekly wage is $800.65.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff worked for defendant-employer for about 27 years, first as a tire builder, then as a palletizer.
2. Until January 18, 2004, plaintiff spent approximately 10 years working as a palletizer, which required him to rotate between being the gantry man, forklift operator and identifier. As the gantry man, plaintiff strapped tires to the pallet to prevent them from falling off. This was the most physically demanding part of the job and required repetitive use of the hands, wrists, arms and shoulders. As the identifier, plaintiff identified each tire, typed information on a keyboard and attached printed stickers to the tires.
3. Strapping tires to the pallets involved plaintiff reaching down into each stack of tires, grasping a bungee cord and stretching the cord to attach it to the inner portion of the tire stack. Each stack of tires had four bungee cords. Plaintiff did this task for four hours of a standard 12-hour shift.
4. All three of plaintiff's major job duties as a palletizer required repetitive use of his hands, with strapping down tires and identifying tires being the most repetitive.
5. Plaintiff reported an injury to his neck and shoulders while strapping down tires on January 18, 2004. After that, plaintiff continued to work with assistance from his co-workers *Page 3 
until February 2, 2004, when plaintiff's pain worsened. Plaintiff was then placed on medical work restrictions and worked within these restrictions until February 10, 2004, when a co-worker complained that he and the other co-workers could no longer cover for plaintiff.
6. On February 11, 2004, defendant-employer placed plaintiff on short-term disability leave.
7. Plaintiff treated on his own with Drs. Murray, VanDerNoord and Lehman. The doctors had some difficulty determining the cause of all of plaintiff's symptoms. In October 2004, Dr. Lehman ordered EMG and nerve conduction studies, which were performed on October 21, 2004 and were positive for bilateral carpal tunnel syndrome.
8. Based on the testing results, Dr. Lehman, an orthopedist, diagnosed plaintiff with bilateral carpal tunnel syndrome. Dr. Lehman has continued to treat plaintiff and believes that carpal tunnel release surgery is necessary.
9. Dr. Lehman testified that he is familiar with plaintiff's job duties, having reviewed a job description provided by defendant-employer and having also had plaintiff describe his job duties. Dr. Lehman has also treated about 10 other employees of defendant-employer, who were in jobs similar to plaintiff's, for carpal tunnel syndrome.
10. Dr. Lehman testified that plaintiff's job with defendant-employer placed him at an increased risk of developing carpal tunnel syndrome as compared to the general public.
11. Dr. VanDerNoord, a specialist in physical medicine, rehabilitation and pain medicine, agreed that plaintiff's job placed him at an increased risk of developing carpal tunnel syndrome as compared to the general public.
12. As Drs. Lehman and VanDerNoord each testified, plaintiff's job with defendant-employer more likely than not caused him to develop carpal tunnel syndrome. *Page 4 
13. The greater weight of the evidence shows that as a result of plaintiff's repetitive use of his hands to perform his job duties for defendant-employer, plaintiff developed bilateral carpal tunnel syndrome.
14. The greater weight of the evidence shows that plaintiff's employment placed him at an increased risk for developing the occupational disease of bilateral carpal tunnel syndrome compared to members of the general public not so employed.
15. Plaintiff has not shown, however, that he is disabled by his bilateral carpal tunnel syndrome within the meaning of the Workers' Compensation Act, as he is currently disabled from an unrelated injury.
16. Further treatment with Dr. Lehman is reasonably necessary to effect a cure and/or provide relief to plaintiff for his bilateral carpal tunnel syndrome.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Compensation under the Workers' Compensation Act may be awarded for an occupational disease pursuant to N.C. Gen. Stat. § 97-53(13) if two conditions are met: (1) the disease must be "proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment"; and (2) the disease cannot be an "ordinary disease of life to which the general public is equally exposed outside of the employment." Booker v. Medical Center, 297 N.C. 458, 468;256 S.E. 2d 189, 196 (1979). The claimant bears the burden of proving the existence of an occupational disease. Gay v. J.P. Stevens Co., *Page 5 79 N.C. App. 324, 331, 339 S.E. 2d 490, 494 (1986). Plaintiff has shown that he suffers from compensable bilateral carpal tunnel syndrome. N.C. Gen. Stat. § 97-53(13).
2. Plaintiff is entitled to receive medical treatment from defendant for his compensable bilateral carpal tunnel syndrome, including but not limited to reimbursement for payments for all treatment that he has heretofore received for said condition. N.C. Gen. Stat. § 97-25.
3. Plaintiff is not entitled to any indemnity compensation, as he has not shown that he is disabled as a result of his compensable disease. N.C. Gen. Stat. § 97-2(9).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Dr. Lehman is hereby designated as plaintiff's treating physician.
2. Defendant SHALL authorize and pay for all medical treatment that Dr. Lehman recommends for plaintiff's compensable bilateral carpal tunnel syndrome, including but not limited to surgeries, diagnostic testing, prescriptions and referrals.
3. To the extent that plaintiff or any third-party payor has made payments for any of the treatment that plaintiff has heretofore received for his compensable bilateral carpal tunnel syndrome, defendant shall reimburse such payor(s) in full.
4. Defendant shall pay the costs.
 This the 5th day of June, 2007. *Page 6 
S/________________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/________________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING:
 S/________________________ DIANNE C. SELLERS COMMISSIONER *Page 7